UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

        - against -

HAKMET OTHMAN,

        Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
18-CR-98 (PKC)

PAMELA K. CHEN, United States District Judge:

    Pending before the Court is the Government's request that the Court order the Bureau of Prisons ("BOP") to turn over funds held in Defendant Hakmet Othman's inmate trust account, to be applied to his outstanding criminal restitution judgment. (Dkt. 34.) Defendant opposes the Government's request *pro se*. (Dkt. 39.) For the reasons that follow, the Court grants the Government's request.

## BACKGROUND

    On August 21, 2019, Defendant pled guilty to Count One of the Indictment in this matter (8/21/2019 Docket Order), charging him with receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a) and 2252(b)(1) (Dkt. 6). On November 19, 2020, the Court sentenced Defendant to a term of 60 months' custody, five years' supervised release with special conditions, a $100 special assessment fee, and $33,000 in restitution. (Dkt. 31 at ECF[1] 2, 7.) As indicated in the Judgment, restitution in the amount of $33,000 was "due immediately and payable at a rate of $25 per quarter while in custody, and at a rate of 10% of gross monthly income while on supervised release." (*Id.* at ECF 7.)

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

1

On or about October 31, 2022, the BOP informed the Government that Defendant "had accumulated substantial funds, that is, $11,349.44, in his inmate trust account." (Dkt. 34, at 2.) By letter dated November 1, 2022, the Government requested that the BOP "restrain Othman's inmate trust account leaving $500 unencumbered and available for his use." (*Id*.) On November 3, 2022, the BOP confirmed that a total of $10,802.29 had been restrained from Defendant's account. (*Id*.)[2]

On December 1, 2022, the Government requested an order from the Court authorizing the BOP to turn over the restrained funds to apply to Defendant's outstanding restitution judgment. (Dkt. 34.) As of that date, Defendant had paid $200 of his restitution judgment. (Dkt. 34, at 2 (explaining that Defendant had paid a total of $300 as of December 1, 2022, $100 of which was used to satisfy the special assessment imposed in the case).) On January 11, 2023, Defendant, acting *pro se*, opposed the Government's turnover request. (Dkt. 39.) The Government replied on February 23, 2023. (Dkt. 40.)

## LEGAL STANDARD

Title 18, United States Code, § 3664(n) provides:

If a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such person shall be required to apply the value of such resources to any restitution or fine still owed.

---

[2] As noted, $500 has been left in Defendant's inmate trust account. (Dkt. 34, at 7.) Defendant worries that "he'll never know when or if he'll receive any more family support." (Dkt. 39 at 6). However, later in the same brief, he proposes as a compromise that half of his commissary funds be turned over ($5,319.19), and in his supporting calculations he assumes that he will continue to receive "an average of $550 per month from family" for the remainder of his incarceration. (*Id*. at 8.) He separately notes that he received an average of $603.08 per month between July and December 2022, between money from his family and UNICOR. (*Id*. at 5.)

"An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or . . . by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A).

## DISCUSSION

### I.   Turnover of Defendant's Inmate Trust Funds is Proper

The Government argues that it is appropriate for the Court to authorize the turnover of $10,802.29 from Defendant's inmate trust account, pursuant to the provisions of the Mandatory Victims Restitution Act ("MVRA"), to pay the restitution owed by Defendant. (Dkt. 34, at 3.) The Government claims that "[t]he MVRA, at 18 U.S.C. § 3664(n), sets forth an affirmative mandate that a person who receives substantial resources during a period of incarceration shall apply the value of the resources to any fine or restitution still owed." (Dkt. 34, at 4 (citing *United States v. Kelly*, 627 F. Supp. 3d 148, 150 (E.D.N.Y.)).) Defendant opposes the Government's request, arguing that: (1) the $11,349.44 that Defendant had accumulated in his inmate trust account as of October 31, 2022 is not "substantial resources"; (2) the Government is improperly requesting to modify the payment plan ordered by the Court at sentencing; and (3) the Court cannot order seizure of funds if Defendant is not in default of his payment plan. (*See* Dkt. 39.) The Court finds that Defendant's objections are unavailing and that turning over approximately $10,000 of Defendant's inmate trust funds to apply towards his restitution is appropriate pursuant to § 3664(n).

The case law cited by the Government supports the turnover request. In *United States v. Kendrick*, the defendant was ordered to pay installments of "$25 per quarter" on a fine amount of $8,000 and special assessments totaling $800. *Kendrick*, No. 10-CR-6096, 2022 WL 1819390, at *3 (W.D.N.Y. June 3, 2022). Payment on these penalties was "to begin immediately." *Id.* The defendant thereafter received two economic impact payments of $1,800, which were used to offset

3

Defendant's monetary penalties. *Id.* The defendant challenged the offset on the basis that (1) he was not in default on his penalty payments and had been adhering to the payment schedule set forth in his criminal judgment; (2) he had not received proper notice of the offset; and (3) he needed the funds to pay for medicine and other necessities. *Id.* The *Kendrick* court denied the defendant's request for a return of the funds, finding that pursuant to 18 U.S.C. § 3664(n), Defendant was required to apply his economic impact payments to his monetary penalties. *Id.* at *2–3 (reasoning that § 3664(n) "'triggers an automatic payment requirement' upon 'a defendant's receipt of a windfall during imprisonment'" (quoting *United States v. Bratton-Bey*, 564 F. App'x 28, 29 (4th Cir. 2014))).[3]

In *United States v. Kelly*—a case materially similar to the instant matter—the defendant was in BOP custody serving a sentence for racketeering and sex trafficking. *Kelly*, 627 F. Supp. 3d at 149. The Government moved for an order under § 3664(n) authorizing the BOP to turn over more than $27,000 from the defendant's inmate trust account as payment towards either a $100,000 fine and assessments of $900 and $40,000, or for the mandatory restitution award that had yet to be imposed. *Id.* The turnover would have resulted in "leaving a balance of $500" for [the defendant's] use in MCC-Chicago." *Id.* The court concluded that a precondition of default on a court-ordered payment schedule was *not* a precondition to applying Section 3664(n) to collect a defendant's substantial funds. *Id.* at 152–53 (applying *Kendrick*, 2022 WL 1819390).[4] The *Kelly* court thus granted the turnover request as appropriate under § 3664(n). *Id.* at 153.

---

[3] The *Kendrick* court did not address the notice issue, finding that the defendant had not demonstrated his entitlement to the economic impact payments, which were required to be applied to his monetary penalties under § 3664(n). *See Kendrick*, 2022 WL 1819390, at *3.

[4] The Court recognizes that *Kelly* and *Kendrick* are contrary to *United States v. Hickman*, 330 F. Supp. 3d 921 (W.D.N.Y. 2018), in which the district court held that the defendant had to be in default on his fine obligation before the court could issue an order seizing funds from the defendant's inmate trust account. *Hickman*, 330 F. Supp. 3d at 924 (finding that "the Court must

4

Similarly, in *United States v. Lemberger*, the Seventh Circuit found that the district court had appropriately authorized the Government to obtain funds that had been deposited in the defendant's inmate trust account, totaling $4,650, to apply them toward the defendant's restitution obligation of $779,408.  673 F. App'x 579, 759–80 (7th Cir. 2017).  There, as here, payment of restitution, per the criminal judgment, was "to begin immediately." *Id.* at 579.  The Seventh Circuit affirmed the district court's reasoning "that federal law gave the government a lien on [the defendant's] account and obliged him to apply any "substantial resources" to the restitution that he owed."  *Id.* at 579 (citing 18 U.S.C. §§ 3613(c), 3664(k), 3664(n)).  The panel rejected the defendant's argument that because he was already participating in the BOP's Inmate Financial Responsibility Program to pay his restitution, the Government could not take the money from his inmate account.  *Id.* at 580.  Instead, the Seventh Circuit found that the Inmate Financial Responsibility Program and the Government's authority to collect restitution are not mutually exclusive.  *See id.* ("[R]egardless of an inmate's participation in the [Inmate Financial Responsibility] program, the government remains free to use 'all other available and reasonable means in collecting restitution'" (citing 18 U.S.C. § 3664(m)(1)(A)(ii))). The circuit accordingly held that the defendant, "as 'a person obligated to pay restitution' and who had a 'substantial' sum in his inmate trust account was 'required to apply the value of such resources to any restitution.'"  *Id.* (quoting 18 U.S.C. § 3664(n)).  Moreover, "the government's request for the court to order the [BOP] to turn over the funds in his trust account was lawful."  *Id.*  *See also United States v.*

---

first conclude that [the defendant] has defaulted on his payment obligation.").  This Court, however, agrees with the majority of courts that have considered this issue and found that nothing in Section 3664(n) suggests such a requirement. *See Kendrick*, 2022 WL 1819390, at *4 (rejecting *Hickman* and explaining that "the plain language of Section 3664(n) persuades the Court that no statutory precondition of default exists").

*Thornbrugh*, 764 F. App'x 655, 656–57 (10th Cir. 2019) (affirming that $3,172.78 in the defendant's inmate trust account constituted "substantial resources from any source" and approving the turnover of defendant's inmate trust funds "exceeding a balance of $100" to pay restitution); *United States v. Hester*, 708 F. App'x. 441, 442–43 (9th Cir. 2018) (affirming turnover of defendant's inmate trust funds "minus $500 for [the defendant]'s necessary personal expenses" as "substantial resources" and were "required by law to apply" to the "restitution he still owed").

As reflected in the above discussion, courts have found amounts far less than $11,000—the amount in Defendant's inmate trust account as of October 2022—to be "substantial" for purposes of § 3664(n). *See Kendrick*, 2022 WL 1819390, at *3 (finding $1,800 to be substantial); *Lemberger*, 673 F. App'x. at 580 (finding $4,650 to be substantial); *see also United States v. Sabato*, No. 02-CR-0236, 2021 WL 826751, at *2–3 (D. Conn. Mar. 4, 2021) (finding that approximately $4,000 in the defendant's inmate trust account, the vast majority of which came from third parties, constituted "substantial resources" and a "windfall" for purposes of § 3664(n)); *United States v. Schwartz*, No. 20-CR-6033, 2022 WL 537621, at *1, 3 (W.D.N.Y. 2022) (finding $2,000 in stimulus payments deposited in an inmate's account to be "substantial resources"); *United States v. Price*, No. 17-CR-301 (NGG), 2023 WL 4599841, at *2–4 (E.D.N.Y. July 18, 2023) (finding that $5,500 of the defendant's inmate trust account "composed largely of periodic deposits by family members" constituted "substantial resources").

Courts also have rejected Defendant's argument that the turnover cannot be ordered because he is only required to pay $25 per quarter towards restitution while incarcerated under the judgment's payment schedule. *See, e.g., Price*, 2023 WL 4599841, at *4 ("The term 'due immediately' in [the defendant's] Judgment means that the lien created by the restitution order is enforceable in full at any time."); *Kendrick*, 2022 WL 1819390, at *3–4 (explaining any

6

outstanding "total restitution or fine balance" that is to be paid "immediately", regardless of a defendant's compliance with . . . a court-ordered payment schedule" satisfies the meaning of "still owed" under § 3664(n)); *Schwartz*, 2022 WL 537621, at *2 n.2 ("[T]he Court ordered payment on restitution 'to begin immediately and stated that restitution 'is due immediately,' Nothing in the payment plan gives the impression that . . . the government would be barred from exercising its statutory authority to enforce the full restitution order."). *Cf. Kelly*, 627 F. Supp. 3d at 151 (explaining that § 3664(n)'s "plain terms" mandate that a defendant apply "substantial resources" to any fine that is "still owed" and thus defendant's unpaid "fines that have already been ordered" entitle the government to "a lien on the defendant's inmate trust funds"). Indeed, the Government's invocation of § 3664(n) does not alter—and is separate from—the restitution payment schedule in the judgment, which remains in effect notwithstanding the turnover of funds.

## CONCLUSION

Accordingly, the Court authorizes the BOP to turn over $10,802.29 of the funds in Defendant's inmate trust account, which have been restrained by the BOP, to the Clerk of the Court for the Eastern District of New York to be applied towards Defendant's outstanding restitution obligation in this matter.

The Court endorses a Turnover Order for Payment From Inmate Trust Account which is attached to this Memorandum & Order.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 19, 2023
  Brooklyn, New York